IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL PAUL DETTY** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 07-623 |
| | : | |
| **OFFICER MACINTYIER,** | : | |
| <u>et al.</u> | : | |

<u>**MEMORANDUM AND ORDER**</u>

Kauffman, J.                                                                                                                                                November 27 , 2007

      Plaintiff Michael Paul Detty ("Plaintiff") brings this <u>pro se</u> action against Defendants Officer MacIntyier, Officer Kratz, Doctor Davis, and Nurse "Jane Doe," alleging violations of 42 U.S.C. § 1983 ("Section 1983"). Now before the Court is the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion") of Defendants MacIntyier and Kratz ("Defendants").[1] For the reasons that follow, the Motion will be granted in part and denied in part.

**I.    BACKGROUND**

      Accepting as true the allegations of the Complaint, the pertinent facts are as follows:[2] On November 17, 2005, Plaintiff, at the time a pre-trial detainee at the Bucks County Correctional Facility ("BCCF"), was involved in a confrontation with another prisoner in the BCCF dining hall. <u>See</u> Complaint 5. A non-party corrections officer intervened, handcuffed the

---

[1] On October 9, 2007, the Court granted Plaintiff's Motion to File Out of Time Pursuant to Federal Rule of Civil Procedure 60(b), and vacated the September 18, 2007 Order granting Defendants' Motion as uncontested.

[2] The Court will address only those allegations relevant to the claims against Defendants MacIntyier and Kratz.

other prisoner involved in the confrontation, and escorted him from the dining hall.  See id. Defendant Kratz ("Kratz") grabbed Plaintiff's arm, twisted it behind his back, and handcuffed him.  See id.  As Plaintiff was led away, Defendant MacIntyier ("MacIntyier") grabbed his head, slammed it twice into the wall with "extreme and unnecessary force," and then pinned his head to the wall.  Id.  Plaintiff suffered "a massive lump to [his] head and a severe lower back injury." Id.  On or about June 22, 2006, Plaintiff filed an inmate grievance related to the incident.  He received a response from the Warden of BCCF on or about October 16, 2006, denying the grievance.  Plaintiff filed this action on February 14, 2007.

## II.      LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is required "to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party."  Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  In deciding a 12(b)(6) motion, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record."  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"  Victaulic Co. v. Tieman, 2007 U.S. App. LEXIS 20077, at *15 (3d Cir. Aug. 23, 2007) (citations omitted in original) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).  Because Plaintiff is appearing pro se, the Court will construe his Complaint liberally and hold it "to less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).

## III. DISCUSSION

In order to prevail on a Section 1983 claim, a plaintiff must demonstrate "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Robb v. City of Philadelphia, 733 F.2d 286, 290-91 (3d Cir. 1984) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). "Accordingly, the first step in evaluating a § 1983 claim is to identify the exact contours of the underlying rights said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." Travillion v. Leon, 2007 WL 2687316, at *1 (3d Cir. Sept. 14, 2007) (citation omitted).

Plaintiff alleges that Defendants used excessive force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment, see Complaint 7 ("Legal Claim Three"), and that they violated his due process rights under the Fourteenth Amendment. See id. at 8 ("Legal Claim Four").[3]

### A.     Failure to State a Claim Against Defendants Kratz and MacIntyier

Defendants argue that Plaintiff's excessive force claims should be dismissed because he has failed to state a claim for cruel and unusual punishment under the Eighth Amendment.

---

[3] Plaintiff also briefly references the Fourth, Fifth, and Sixth Amendments in his Complaint. The Supreme Court has not yet determined whether the Fourth Amendment applies when the arrest ends and pre-trial detention begins, but it is clear that courts apply the Due Process clause of the Fourteenth Amendment to protect pre-trial detainees from excessive force. See, e.g., Bieros v. Nicola, 860 F. Supp. 226, 230-32 (E.D. Pa. 1994). Accordingly, the Court will examine Plaintiff's excessive force claim under the Fourteenth Amendment rather than the Fourth Amendment. The Due Process clause of the Fifth Amendment is not applicable in this case since Plaintiff was a state rather than federal pre-trial detainee at the time of the incidents at issue. Finally, Plaintiff has not made any factual assertions that would implicate his Sixth Amendment rights.

Plaintiff was a pre-trial detainee at the time of the incident at issue; therefore, his excessive force claims are governed by the Fourteenth Amendment's guarantee of due process instead of the Eighth Amendment's prohibition against cruel and unusual punishment.  See Fuentes v. Wagner, 206 F.3d 335, 344 & n.11 (3d Cir. 2000); Totton v. Keller, 205 Fed. Appx. 919, 921 & n.2 (3d Cir. 2006) ("The general guarantees of the Fourteenth Amendment apply to pre-trial detainees," but "the Eighth Amendment is applicable only to post-trial offenders.").[4]  Since the standard for analyzing an excessive force claim in the context of a prison disturbance is the same under the Fourteenth Amendment and the Eighth Amendment, Defendants' argument that Plaintiff failed to state a claim for excessive force will be considered under the Fourteenth Amendment standard.[5]

      The Supreme Court has stated that "the core judicial inquiry" when a police officer stands accused of using excessive force to quell a prison disturbance is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6 (citing Whitley v. Albers, 475 U.S. 312 (1986)); see also Fuentes, 206 F.3d at 345 (citing Whitley).  Courts should be deferential to officers because they "must balance the need to maintain or restore discipline through force against the risk of injury to inmates" and to officers.  Hudson, 503 U.S. at 6 (internal quotation marks omitted).  In determining whether

---

[4]    Accordingly, to the extent Plaintiff asserts any claims against Defendants under the Eighth Amendment, those claims will be dismissed.

[5]    The Third Circuit has held that when "a pretrial detainee's excessive force claim [arises] *in the context of a prison disturbance,*" the standard for analyzing an excessive force claim under the Fourteenth Amendment is the same as the standard for analyzing a cruel and unusual punishment claim under the Eighth Amendment.  Fuentes, 206 F.3d at 347 (emphasis in original) (holding that the Eighth Amendment cruel and unusual punishment standards elucidated in Whitley v. Albers, 475 US. 312 (1986), and Hudson v. McMillian, 503 U.S. 1 (1992), apply to excessive force claims under the Fourteenth Amendment).

force was applied in good faith, courts should consider: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any effort made to temper the severity of response. See id. at 8.

Defendants argue that Plaintiff has not alleged that they acted with the requisite malicious or sadistic intent to state a claim for excessive use of force.  The sole factual allegations with respect to Kratz are that, following an altercation with another prisoner, "without reasons Officer Kratz came up behind [Plaintiff] and grabbed [his] right arm, twisted it behind [his] back and placed [him] into handcuffs," and then escorted him toward the dining hall exit.  Complaint 5. Plaintiff admits that just prior to being handcuffed, he was following a non-party officer who was escorting the other prisoner involved in the altercation out of the dining hall.  See id.  Accepting the truth of Plaintiff's allegations against Kratz, he fails to assert that Kratz acted with malicious or sadistic intent, or with more force than necessary to handcuff him and put an end to the fight. See, e.g., Anderson v. Sullivan, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (dismissing excessive force claim where the amount of force used to handcuff the plaintiff was not "significantly disproportional" to the goal of handcuffing him and his injuries were not severe).  Accordingly, he has failed to state a claim against Kratz for excessive use of force under the Fourteenth Amendment, and the claim will be dismissed as to Kratz.

Plaintiff also alleges that after he was handcuffed by Kratz, MacIntyier "proceeded to grab hold of my head and severely and brutally slam[] my head into the hallway wall, then slammed my head a second time with extreme and unnecessary force.  Officer MacIntyier then pinned my head to the wall."  Complaint 5.  As a result of MacIntyier's actions, Plaintiff

sustained a massive lump to his head and a severe lower back injury. See id. Assuming the truth of these allegations, Plaintiff's claim that MacIntyier slammed his head against a wall after he had been handcuffed would permit an inference of malicious and sadistic intent. Therefore, he has satisfied the second element of a §1983 claim against MacIntyier by alleging excessive use of force under the Fourteenth Amendment. Since "[p]rison officials acting in their official capacity are acting under color of state law," Unterberg v. Correctional Medical Systems, Inc., 799 F. Supp. 490, 494 (E.D. Pa. 1992), Plaintiff also has satisfied the first element of a §1983 claim. Accordingly, the Motion will be denied with respect to the excessive force claim against Officer MacIntyier.

    **B.**    **Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity in their individual capacities. See Motion at ¶¶ 13-16. "Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." James v. York County Police Dep't, 160 Fed. Appx. 126, 134 (3d Cir. 2005). In order to determine whether a defendant is entitled to immunity, the Court must engage in a two-part inquiry: first, whether the challenged conduct amounts to a constitutional violation, and second, whether the right was "clearly established" at the time of the alleged deprivation. See Saucier v. Katz, 533 U.S. 194, 202 (2001). With respect to the second prong, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. Since Plaintiff has failed to state a claim against Kratz, the Court will consider qualified immunity only with respect to MacIntyier.

As discussed above, Plaintiff has asserted a Fourteenth Amendment claim against MacIntyier for excessive use of force which, if proven, could amount to a constitutional violation under the first part of the Saucier inquiry.  Under the second part of the Saucier inquiry, the Court must determine whether Plaintiff's allegedly violated right was "clearly established" at the time of the incident.  If Plaintiff can prove his allegations, it would not be unreasonable to conclude that MacIntyier should have known that severely beating a handcuffed prisoner would violate the well-established right against excessive use of force.  See, e.g., Hudson, 503 U.S. at 6-7; Gailor v. Armstrong, 187 F. Supp. 2d 729, 737 (W.D. Ky. 2001) (noting that liability for use of excessive force under the Eighth Amendment is clearly established).  Accordingly, the motion to dismiss the excessive force claim against MacIntyier on the ground that he is entitled to qualified immunity will be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion will be granted in part and denied in part. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL PAUL DETTY : | CIVIL ACTION |
| v. : | NO. 07-623 |
| OFFICER MACINTYIER, : | |
| <u>et al.</u> : | |

## <u>ORDER</u>

**AND NOW**, this         day of November, 2007, upon consideration of the Motion to Dismiss of Defendants MacIntyier and Kratz (docket no. 12) and Plaintiff's Opposition thereto (docket no. 19), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **GRANTED** in part and **DENIED** in part.  Accordingly, Plaintiff's Complaint as against Defendant Kratz is **DISMISSED**.  Defendants' Motion is denied in all other respects.

                                                 BY THE COURT:

                                                 S/ BRUCE W. KAUFFMAN
                                                 BRUCE W. KAUFFMAN, J.